1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    AMY SOON, et al.,                          Case No. 23-cv-05189-HSG

8                 Plaintiffs,                   **ORDER GRANTING MOTION TO
                                                DISMISS AND DENYING MOTION TO
9            v.                                 STRIKE**

10   CAMILA RAMOS GARZON, et al.,               Re: Dkt. No. 35

11                Defendants.

12

13          Pending before the Court is Defendants' motion to dismiss and motion to strike Plaintiffs'

14   complaint. *See* Dkt. No. 35 ("Mot."); Dkt. No. 44 ("Opp."); Dkt. No. 51 ("Reply"). The Court

15   finds this matter appropriate for disposition without oral argument and the matter is deemed

16   submitted. *See* Civil L.R. 7-1(b). For the reasons discussed below, the Court **GRANTS** the

17   motion to dismiss. The Court **DENIES** the motion to strike.

18   **I.    BACKGROUND**

19          In October 2023, Plaintiffs Amy Soon, Aikshee Loh, and Blu3 Foundation, LLC, d/b/a

20   Blu3 DAO ("Blu3") filed a lawsuit against Defendants Camila Ramos Garzon and Women Build

21   Web3 ("WBW3"), alleging defamation, tortious interference with actual or prospective contractual

22   relations, and false advertising under 15 U.S.C. § 1125(a)(1)(B) of the Lanham Act. *See* Dkt. No.

23   1 ("Compl.") ¶ 1. Blu3 is alleged to be a "decentralized autonomous organization ('DAO')" that

24   "provides education, web3 experiential learning, technical workshops, educational talks, [and]

25   technology workshops." *Id.* ¶ 19. Defendant Garzon is alleged to be the founder of Defendant

26   WBW3, which is allegedly a "community-owned venture builder for women turning their passions

27   int ventures and innovating in web3," and acts as a "direct competitor of Plaintiffs." *Id.* ¶¶ 12, 23,

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1  40 (quotation omitted).[1]

2      Defendant Garzon allegedly issued a series of public statements on Twitter (now X) in

3  October 2022 "discrediting, defaming, and completely disrupting operations of Plaintiff Blu3."

4  *Id.* ¶¶ 24, 26.  For example, Defendant Garzon apparently stated that there were questionable

5  features of Plaintiffs' finances, and Defendants "cut and pasted online statements stating Plaintiffs

6  were 'professional fraudsters.'"  *Id.* ¶¶ 26–27.  In addition, Defendants apparently discussed

7  accusations that Plaintiffs had misused grant money, commingled personal money with the DAO's

8  finances, and received $1,000,000 in grant money while continuing to ask for more.  *Id.*; *see also*

9  Dkt. No. 35-1 at 9 (full record of tweets at issue).[2]  Plaintiffs claim that these representations were

10  "verifiably false," pointing generally to unspecified "public statements . . . showing that

11  everything stated by [Defendants] was verifiably untrue and inaccurate," and the fact that

12  Plaintiffs only received $75,000 of grant money.  Compl. ¶ 36 (emphasis omitted).  Plaintiffs also

13  claim that Defendants misrepresented the fact that they "did [their] homework" and "gathered

14  receipts."  *Id.* ¶ 37 (quoting tweets).  Plaintiffs claim that these statements were broadly

15  disseminated to online readers and caused Plaintiffs significant loss of goodwill and business

16  opportunities.  *Id.* ¶¶ 34–35.

17  **II.    MOTION TO DISMISS**

18      Defendants seek dismissal of Plaintiffs' Lanham Act claim for failure to state a claim.

19  Mot. at 16.  They also ask the Court to decline supplemental jurisdiction over Plaintiffs' state law

20  claims if the Court dismisses the single federal claim.  *Id.* at 21.

21      **i.    Legal Standard**

22      Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain

23

24  [1] Plaintiffs explain that "Web1 would be the earliest form(s) of the internet and use of physical
infrastructure," "Web2 was (and remains) an era where the internet became much more active"

25  and social media and "other centralized online presences" were developed and adopted, and Web3
"refers to an extension of cryptocurrency, using blockchain in new ways to new ends."  Compl.

26  ¶ 19 n.4.  These distinctions—as well as the relationship between DAOs, blockchain, and Web3—
are largely irrelevant for the purposes of this order.

27  [2] As discussed below, Defendants' motion includes Dkt. No. 35-1 as an exhibit containing more

28  complete excerpts from the full Twitter thread, and Defendants argue that the exhibit should be
considered under the incorporation-by-reference doctrine.  Mot. at 13 n.4.

United States District Court
Northern District of California

1    statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  A

2    defendant may move to dismiss a complaint for failing to state a claim upon which relief can be

3    granted under Rule 12(b)(6).  "Dismissal under Rule 12(b)(6) is appropriate only where the

4    complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."

5    *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  To survive a Rule

6    12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible

7    on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible

8    when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that

9    the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

10   In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as

11   true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v.*

12   *St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  Nevertheless, courts do not

13   "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or

14   unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)

15   (quotation omitted).

16          Even if the court concludes that a 12(b)(6) motion should be granted, the "court should

17   grant leave to amend even if no request to amend the pleading was made, unless it determines that

18   the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203

19   F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted).

20                    **ii.    Discussion**

21                         **a.   False Advertising Under the Lanham Act (Count Two)**

22          Plaintiffs allege that Defendants made false statements about Plaintiffs, causing business

23   loss and reputational harm in violation of the Lanham Act's prohibition on false advertising.

24   Compl. ¶¶ 48–49.  Defendants argue that (1) Plaintiffs' claim is conclusory; (2) the tweets at issue

25   were not a commercial advertisement; (3) the tweets do not make a false statement about

26   Plaintiffs' or Defendants' products; and (4) the tweets could not have materially deceived anyone

27   into making a purchasing decision.  Mot. at 16–19.

28          The elements of a Lanham Act false advertising claim under 15 U.S.C. §1125(a)(1)(B) are:

3

United States District Court
Northern District of California

1    "(1) a false statement of fact by the defendant in a commercial advertisement about its own or

2    another's product; (2) the statement actually deceived or had the tendency to deceive a substantial

3    segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing

4    decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the

5    plaintiff has been or is likely to be injured as a result of the false statement, either by direct

6    diversion of sales from itself to defendant or by a lessening of the goodwill associated with its

7    products."  *See Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997).

8        As this Court has previously explained, the law is not "clear" about "what type of speech

9    qualifies as commercial speech."  *United States v. Schiff*, 379 F.3d 621, 626 (9th Cir. 2004);

10   *Alfasigma USA, Inc. v. First Databank, Inc.*, 525 F. Supp. 3d 1088, 1095–99 (N.D. Cal. 2021)

11   (discussing this precedent in the context of a pharmaceutical database).  Although the Supreme

12   Court has held that the "core notion of commercial speech" encompasses "speech which does no

13   more than propose a commercial transaction," *see Bolger v. Youngs Drug Prod. Corp.*, 463 U.S.

14   60, 66 (1983) (quotation omitted), courts have been reluctant to articulate a bright-line rule to

15   identify commercial speech that falls outside this "core" zone.  *Cf. City of Cincinnati v. Discovery

16   Network, Inc.*, 507 U.S. 410, 419 (1993) (acknowledging "the difficulty of drawing bright lines

17   that will clearly cabin commercial speech in a distinct category"); *Cent. Hudson Gas & Elec.

18   Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 579 (1980) (Stevens, J., concurring)

19   (cautioning that commercial speech should "not be defined too broadly lest speech deserving of

20   greater constitutional protection be inadvertently suppressed").

21       Rather, the "commercial speech analysis is fact-driven," and courts "try to give effect to a

22   common-sense distinction between commercial speech and other varieties of speech."  *See Ariix,

23   LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1115 (9th Cir. 2021) (quotations omitted).  "Where the

24   facts present a close question," the Supreme Court has identified three non-exhaustive factors for

25   courts to consider as part of the commercial speech analysis: (1) whether the speech is an

26   advertisement; (2) whether the speech refers to a particular product; and (3) whether the speaker

27   has an economic motivation for publication.  *See id.* at 1115–16 (citing *Bolger*, 463 U.S. at 66–

28   68).

4

1    However, not all commercial speech is actionable under the Lanham Act.  "The Lanham

2  Act prohibits any person from misrepresenting her or another person's goods or services in

3  'commercial advertising or promotion.'"  *See Ariix*, 985 F.3d at 1114–15 (quoting 15 U.S.C.

4  § 1125(a)(1)(B)).  Commercial advertising or promotion, in turn, is defined as: "(1) commercial

5  speech, (2) by a defendant who is in commercial competition with plaintiff, (3) for the purpose of

6  influencing consumers to buy defendant's goods or services, and (4) that is sufficiently

7  disseminated to the relevant purchasing public."  *Ariix*, 985 F.3d at 1115 (citing *Coastal Abstract

8  Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 735 (9th Cir. 1999)).[3]

9    Defendants argue that Defendant Garzon's tweets "do not advertise any product or service

10  that Ms. Garzon (or WBW3) sell, nor do they disparage Plaintiffs' product" and that it "does not

11  appear that either Plaintiffs or Defendants offer a product or service in the market."  Mot. at 18.

12  Plaintiffs argue that two included statements made by Ms. Garzon transform the tweets into

13  commercial speech: (1) "I run an organization dedicated to advancing womens & nb ppls careers";

14  and (2) "And a plug: if you want to support an organization with complete financial transparency

15  and a proven track record check out @womebuildweb3."  Opp. at 23 (quoting Dkt. No. 35-1 at 5,

16  8).  The application of the commercial speech doctrine to the first statement is not a close

17  question, and the Court easily concludes that a generic statement about Defendant Garzon's role at

18  an unnamed organization does not create a commercial advertisement on its own.

19    While Defendant Garzon's statement about supporting @womenbuildweb3 thus appears to

20  be essential to Plaintiffs' argument that the tweets were a commercial advertisement, that

21  statement does not appear anywhere in Plaintiffs' complaint.  Instead, Plaintiffs reference this

22  statement for the first time in their opposition by citing to Defendants' exhibit of the full set of

23  tweets.  *See* Opp. at 23.  Defendants argue that this exhibit is incorporated by reference in

24  Plaintiffs' complaint.  Mot. at 13 n.4.  The parties do not dispute the authenticity of these tweets,

25

26  _____

27  [3] Although the Ninth Circuit has not yet weighed in, *see Ariix*, 985 F.3d at 1120, other courts have found that the Supreme Court's opinion in *Lexmark* appears to have abrogated the "in competition" prong.  *See Genus Lifesciences Inc. v. Lannett Co., Inc.*, 378 F. Supp. 3d 823, 844

28  (N.D. Cal. 2019) (collecting cases).

5

1    and the Court agrees that the full series of tweets could normally be considered in a 12(b)(6)

2    motion under a traditional application of the incorporation-by-reference doctrine. *Knievel v.*

3    *ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (permitting courts to consider documents on a motion

4    to dismiss where "the plaintiff's claim depends on the contents of a document, the defendant

5    attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of

6    the document, even though the plaintiff does not explicitly allege the contents of that document in

7    the complaint").

8          But the Court declines to extend the incorporation-by-reference doctrine to the strange

9    posture where a document offered for incorporation by *a defendant* then purportedly supplies an

10   essential element of the Plaintiffs' case.  The Court is not aware of any cases that have dealt with

11   this issue, and Plaintiffs do not brief this complexity or provide any authority supporting their

12   implicit premise.  This is normally a doctrine that favors defendants by allowing them to provide

13   additional context, and the Court doubts it was intended to apply here. *Khoja v. Orexigen*

14   *Therapeutics, Inc.*, 899 F.3d 988, 1003 (9th Cir. 2018) (noting that "the incorporation-by-

15   reference doctrine is designed to prevent artful pleading by plaintiffs").  The Court also has

16   significant concerns about endorsing pleadings that omit essential factual theories, which can then

17   be argued for the first time on opposition.  Such an approach is at odds with the requirement that

18   pleadings provide adequate notice of the underlying claims.  Given this, Plaintiffs' complaint does

19   not adequately plead Defendant Garzon's alleged "plug" for @womenbuildweb3, and the Court

20   cannot identify any other support for Plaintiffs' argument that this was commercial speech.  The

21   Court thus **GRANTS** Defendants' motion to dismiss the Lanham Act claim.  If Plaintiffs choose

22   to amend their claim, they must include adequate factual allegations.

23         Because Plaintiffs will likely be able to fix this defect simply by including reference to the

24   missing statement, the Court offers some additional guidance.  On one hand, the Court finds

25   Defendants' arguments overly simplistic, and it is not persuaded that the tweets must identify a

26   specific product or service from Plaintiffs or Defendants to constitute commercial speech.

27   Plaintiffs allege that Defendants "utilized the forum for promotion of their products and services to

28   defame Plaintiffs, to harm the business of Plaintiffs, and to gain commercial advantage(s)."

United States District Court
Northern District of California

1   Compl. ¶ 40.  Plaintiffs also identify Defendant Garzon's "plug" to "support an organization with

2   complete financial transparency," which plausibly promotes WBW3 by contrasting WBW3 and

3   Blu3 DAO's commercial practices.  While this statement does more than propose a commercial

4   transaction, depending on how it is pled it might plausibly support a claim that the tweets were an

5   advertisement for WBW3, veiled as a criticism of a competitor.  *See Bolger*, 463 U.S. at 66–68; *cf.*

6   *Grasshopper House, LLC v. Clean & Sober Media, LLC*, No. 2:18-cv-00923-SVW-RAO, 2018

7   WL 6118440, at *12 (C.D. Cal. July 18, 2018) ("The doctrine of commercial speech also reaches

8   financially motivated 'opinions' that businesses offer about their competitors or other

9   companies."); *Pegasystems, Inc. v. Appian Corp.*, 463 F. Supp. 3d 152, 164 (D. Mass. 2020)

10  (finding commercial advertising where LinkedIn post was "made with the intent of influencing

11  potential customers to purchase [defendant's] goods or services over those of plaintiff").  And

12  while the speech does not refer to a particular product, the allegations could plausibly suggest that

13  Ms. Garzon had an economic motivation for publication—promoting WBW3.  *See id.*[4]

14  Defendants do not explain why a specific reference to a product or service is necessary to

15  transform this into a commercial advertisement.[5]

16      This situation may also be distinguishable from the cases that Defendants cite.  For

17  instance, *Children's Health Def. v. Facebook Inc.*, 546 F. Supp. 3d 909 (N.D. Cal. 2021), *aff'd sub*

18  *nom. Children's Health Def. v. Meta Platforms, Inc.*, 112 F.4th 742 (9th Cir. 2024), involved a

19

---

[4] However, "the crux [of the economic motivation factor] is on whether the speaker had an adequate economic motivation so that the economic benefit was the primary purpose for speaking." *Ariix*, 985 F.3d at 1117; *see also Children's Health Def. v. Meta Platforms, Inc.*, 112 F.4th 742, 765 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 2846 (2025) (same).

[5] Defendants also argue that they did not disparage Plaintiffs' product, which is similar to their argument that Plaintiffs have not alleged a false statement of fact *about any products or services*. *See* Mot. at 18–19.  This argument has some appeal, since cases like *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997), require "a false statement of fact by the defendant in a commercial advertisement about its own or another's product."  But a false advertising claim arises where a person "misrepresents the nature, characteristics, [or] qualities . . . of another person's goods, services, *or commercial activities*."  15 U.S.C. § 1125(a)(1)(B).  For this reason, other courts have held that misrepresentations about a competitor's business practices can give rise to a false advertising claim.  *See, e.g.*, *Proctor & Gamble Co. v. Haugen*, 222 F.3d 1262, 1270–72 (10th Cir. 2000) (discussing misrepresentation that plaintiff supported Satan).  The Court will consider this question in light of Ninth Circuit precedent if this argument is raised again at a later stage.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   case where Meta fact-checked the plaintiff's posts, labeled them as inaccurate, and directed users

2   to the CDC's website. *Id.* at 934–35. The court observed that the alleged misrepresentations were

3   "simply providing information" and noted that "the warning label and fact-checks do not

4   encourage Facebook users to donate to the CDC, the fact-checking organizations, or any other

5   organization." *Id.* at 935; *see also Edward Lewis Tobinick, MD v. Novella*, 848 F.3d 935, 951

6   (11th Cir. 2017) (finding speech was not commercial where "the articles do not discuss any

7   products for sale by [the defendant], and, as discussed, only briefly mention his [medical] practice

8   for context"). Here Defendant Garzon's "plug" for readers to "support" WBW3 could more

9   obviously constitute a request for viewers to financially support WBW3, including through

10  donations.

11      However, Plaintiffs' complaint provides almost no basic facts about what WBW3 is and

12  does, which at a minimum prevents the Court from reasonably inferring that this was speech "for

13  the purpose of influencing consumers to buy defendant's goods or services." *Ariix*, 985 F.3d at

14  1115 (citation omitted). Plaintiffs state that (1) "WBW3 markets itself on its website as the

15  'community-owned venture builder for women turning their passions into ventures and innovating

16  in web3,'" Compl. ¶ 12; (2) WBW3 operates as a DAO, which has been recognized as a legal

17  entity, *id.* ¶ 13; and (3) "WBW3 describes itself as . . . 'a vetted community and three-tiered DAO

18  for women entrepreneurs who want to learn, prototype, and venture together through facilitated

19  cohort experiences. Members receive a Proof-of-Work, dynamic NFT for each completed level.

20  They will gain the knowledge, experience, validation, network, and actionable next steps to

21  venture in web3," *id.* ¶ 14. Plaintiffs also assert that Defendant "WBW3 operates in the Web3

22  space, engages in the same or similar business focus(es) as Plaintiff Blu3, and would objectively

23  be described (and construed) as *a direct competitor* of Plaintiff Blu3." *Id.* ¶ 23.

24      These vague and conclusory assertions are inadequate. *Cf. Maffick LLC v. Facebook, Inc.*,

25  No. 20-CV-05222-JD, 2021 WL 1893074, at *3 (N.D. Cal. May 11, 2021) (noting that "it is not at

26  all clear what line of business [plaintiff] is in" and rejecting the idea that "highly general

27  allegations about 'e-commerce merchandise' and 'monetization of media content,'" could remedy

28

1    this).[6]  The Court needs some basic allegations about what WBW3 does in order to reasonably

2    infer that Defendant Garzon's "plug" to "support" WBW3 was for some sort of commercial good

3    or service, and not, for example, for an ideological community.[7]  Plaintiffs argue that "[t]he

4    statements made by Ms. Garzon . . . influenced others in the DAO/Web3 space to instead

5    use/purchase services from WBW3 instead of Blu3."  Opp. at 24 (emphasis omitted).  But nothing

6    in the complaint supports that conclusion—there is factual support to suggest that Defendant

7    Garzon's comments caused Blu3 to suffer a loss of goodwill, Compl. ¶ 35, but not to suggest that

8    purchasers were driven to purchase something from WBW3 in lieu of Blu3.  This would have

9    been an independent basis for the Court to dismiss Plaintiffs' Lanham Act claims.  Plaintiffs

10   should consider if and how they can remedy these issues if they wish to pursue this claim in an

11   amended pleading, as opposed to declining to amend the federal claim and choosing to litigate

12   their state claims in state court.[8]

### iii.    State Law Claims

14       Defendants next argue that the Court should decline supplemental jurisdiction over the

15   state law claims if it dismisses the Lanham Act claim.  Mot. at 20–21.  "A court may decline to

16   exercise supplemental jurisdiction over related state-law claims once it has 'dismissed all claims

17   over which it has original jurisdiction.'"  *Ove v. Gwinn*, 264 F.3d 817, 826 (9th Cir. 2001)

18   (quoting 28 U.S.C. § 1367(c)(3)).  "[I]n in the usual case in which all federal-law claims are

19

United States District Court
Northern District of California

---

20   [6] The Court acknowledges that the false advertising case was weaker for the plaintiff in *Maffick*,
where "nothing in the complaint ties Facebook's alleged virtue-signaling speech to anything that
21   might amount to a commercial ad or promotion of Facebook's platform."  2021 WL 1893074, at
*4.  Nevertheless, the Court still requires additional facts to reasonably make the inferences that
22   Plaintiffs seek.

23   [7] There is also another problem.  Defendants claim that "Plaintiffs have incorrectly conflated
WBW3 with Women in Web3 – an unrelated organization."  Mot. at 10 n.1 (discussing Compl.
24   ¶¶ 12–15).  This wouldn't normally be a problem at the motion to dismiss stage, since the Court
must accept Plaintiffs' factual allegations as true.  But the only plausible commercial
25   advertisement is Defendant Garzon's statement that readers should "check out
@womebuildweb3."  *See* Dkt. No. 35-1 at 5.  Plaintiffs clearly believe this is an advertisement for
26   WBW3.  That theory is at odds with Plaintiffs' actual allegations, which state that "WBW3 also
seemingly retains an active X . . . account with the handle @women**in**web3."  Compl. ¶ 12
27   (emphasis added).  If Plaintiffs are incorrectly discussing a separate entity, they should clarify
their allegations in any amended pleading.

28   [8] The Court does not reach Defendants' remaining arguments.

United States District Court
Northern District of California

1    eliminated before trial, the balance of factors to be considered under the pendent jurisdiction

2    doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to

3    exercise jurisdiction over the remaining state-law claims." *Sanford v. MemberWorks, Inc.*, 625

4    F.3d 550, 561 (9th Cir. 2010) (quotation omitted); *see also United Mine Workers of Am. v. Gibbs*,

5    383 U.S. 715, 726–27 (1966) ("Needless decisions of state law should be avoided both as a matter

6    of comity and to promote justice between the parties . . . .").

7         The Court agrees.  Plaintiffs allege that the Court has federal question jurisdiction over the

8    federal claims and supplemental jurisdiction over the state claims.  Compl. ¶ 2.[9]  Having dismissed

9    all the federal claims, the Court will decline supplemental jurisdiction and hold off on ruling on

10   the viability of Plaintiffs' state law claims unless and until they state an actionable federal claim.[10]

11   Accordingly, Plaintiffs' state law claims are **DISMISSED** without prejudice.

## III.    MOTION TO STRIKE

13        Defendants also bring an anti-SLAPP motion to strike Plaintiffs' state-law claims in the

14   alternative.  Mot. at 21.  Because the Court has declined supplemental jurisdiction over the state

15   law claims unless and until Plaintiffs state a viable federal claim, the Court **DENIES** Defendants'

16   motion to strike without prejudice.

## IV.    CONCLUSION

18        Defendants' motion to dismiss, Dkt. No. 35, is **GRANTED WITH LEAVE TO**

19   **AMEND**.  Defendants' motion to strike, Dkt. No. 35, is **DENIED WITHOUT PREJUDICE**.  If

20   Plaintiffs are able to adequately state a claim for a federal cause of action, they may file an

21   amended complaint within 21 days of the date of this order.  They may not add any new claims or

22   defendants.

23        The Court further **SETS** a case management conference on February 10, 2026, at 2:00 p.m.

24

---

[9] Plaintiffs have not clearly pleaded allegations conferring diversity jurisdiction.  Plaintiff Soon and Defendant WBW3 both appear to be citizens of California, though Plaintiffs ambiguously allege that WBW3 operates "in California and/or abroad."  Compl. ¶¶ 7, 11.

[10] Plaintiffs should assume that if the Court finds any amended Lanham Act claim inadequately pled, it will dismiss that claim without further leave to amend and decline supplemental jurisdiction over the state law claims without prejudice to their refiling in state court.

United States District Court
Northern District of California

1   The hearing will be held by Public Zoom Webinar.  All counsel, members of the public, and

2   media may access the webinar information at https://www.cand.uscourts.gov/hsg.  All attorneys

3   and pro se litigants appearing for the case management conference are required to join at least 15

4   minutes before the hearing to check in with the courtroom deputy and test internet, video, and

5   audio capabilities.  The parties are further **DIRECTED** to file a joint case management statement

6   by February 3, 2026.

7

8        **IT IS SO ORDERED.**

9   Dated:    1/15/2026

10

11                                        HAYWOOD S. GILLIAM, JR.
                                          United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28